IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 AUG 30 AM 7: 45

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CHRISTOPHER R. CASEY,

    Defendant.

Ӿ
Ӿ
Ӿ
Ӿ
Ӿ
Ӿ     Cv. No. 04-2844-Ml/P
Ӿ     Cr. No. 02-20308-Ml
Ӿ
Ӿ
Ӿ
Ӿ
Ӿ

---

ORDER CORRECTING THE DOCKET
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Defendant Christopher R. Casey, Bureau of Prisons ("BOP") inmate registration number 18566-076, who is currently incarcerated at the Federal Correctional Institution in Forrest City, Arkansas,[1] filed a _pro_ _se_ motion pursuant to 28 U.S.C. § 2255 on October 18, 2004.

On August 22, 2002, a federal grand jury returned a single-count indictment charging that Casey, on or about November 1, 2001, retained or concealed United States Savings Bonds Series HH in the amount of $287,500 knowing that the same were stolen, in violation of 18 U.S.C. § 510(b). Pursuant to a written plea agreement, Casey appeared before this judge on December 30, 2002 to plead guilty to the

---

    [1]    Although the defendant did not notify the Clerk of his new address, his current location is found on the BOP website. The Clerk is ORDERED to correct the docket to reflect the defendant's current address.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _8-30-05_



sole count of the indictment. The Court conducted a sentencing hearing on March 31, 2003, at which time Casey was sentenced to imprisonment for a term of sixty-three (63) months, to be followed by a three-year period of supervised release. Judgment was entered on April 1, 2003. Casey's direct appeal was voluntarily dismissed on September 22, 2004. United States v. Casey, No. 03-5538 (6th Cir. Sept. 22, 2004).

Casey has now filed a motion pursuant to 28 U.S.C. § 2255. Casey first states that "petitioner held hostage, captive, involuntary forced peonage under fraudulent documents, district court of petitioners, [sic] conviction has-had [sic] no jurisdiction to prosecute petitioner, abscent [sic] commerce nexus, state land at locus quo not ceded to U.S. and more." He goes on to state that "[m]ovant-petitioner rejects corporate existence and invokes his guaranteed republican forum as his own political will i.e. self-governing juris et dejure, mull tiel [sic] corporation and does not consent to remain in prison." Casey demands that the Court separately respond to each of his sixty-one (61) issues. However, the motion does not set forth sixty-one (61) issues. Instead, attached to the motion is a twenty-eight (28) page document, entitled "Justification." Each of the paragraphs is separately numbered, but each paragraph consists of textual argument, rather than "issues," none of which are individually tailored to the facts of this defendant's offense, guilty plea, and sentencing.

Paragraphs 1-11, 40-41, 44, 46, and 55 assert that the federal government did not have territorial jurisdiction over the land on which the offense occurred because the State of Tennessee did not cede control of the land. This argument lacks merit for several

2

reasons. First, the statute under which Casey was convicted does not require that the offense have been committed on federal land. See United States v. Callan, 72 Fed. Appx. 349, 350-51 (6th Cir. Aug. 4, 2003).[2] Second, this Court has subject-matter jurisdiction pursuant to 18 U.S.C. § 3231, which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

As a result, the Sixth Circuit has flatly rejected similar challenges to the jurisdiction of the federal courts over violations of federal criminal statutes:

> Here, contrary to Bryson's argument, the district court properly exercised jurisdiction over his offenses. Although Bryson maintained that his offenses did not occur within the territorial jurisdiction of the United States, it is clear that 18 U.S.C. § 3231 gives the federal courts original and exclusive jurisdiction over federal crimes. See United States v. Allen, 954 F.2d 1160, 1165-66 (6th Cir. 1992). The district court indisputably had subject matter jurisdiction over his indictment for violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c). Federal courts have exclusive jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231; the permission of the states is not a prerequisite to exercise that jurisdiction. See United States v. Sitton, 968 F.2d 947, 953 (9th Cir. 1992).

United States v. Bryson, No. 00-3619, 2001 WL 700816, at *2 (6th Cir. June 15, 2001); see also Callan, 72 Fed. Appx. at 350-51; United States v. Hamilton, 263 F.3d 645 (6th Cir. 2001) (rejecting a defendant's contention that Louisville, Kentucky is outside the jurisdiction of the federal government; "This is a frivolous argument

---

2     Eighteen U.S.C. § 510(b) provides: "Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges, receives, delivers, retains, or conceals any such Treasury check or bond or security of the United States shall be fined under this title or imprisoned not more than ten years, or both."

that ignores the basic principles of federalism. The fact that Kentucky has sovereignty within its boundaries does not bar the United States from having concurrent jurisdiction to indict and prosecute Hamilton for federal crimes occurring within those same boundaries."); United States v. Mundt, 29 F.3d 233, 237 (6th Cir. 1994) (rejecting as "completely without merit and patently frivolous" the argument that defendant cannot be prosecuted for income tax violations because he is solely a resident of Michigan and not of any "federal zone").

For all the foregoing reasons, the issues raised in ¶¶ 1-11 are without merit and are DISMISSED.

Paragraphs 12-14 and 19, although not clear, seem to suggest that federal criminal statutes are constitutional only when they concern an enumerated power of the federal government. Paragraphs 42-43 make an unclear argument about the Tenth Amendment and the division of authority between the federal government and the states. As Casey recognizes, see Justification, ¶ 13, one of those enumerated powers authorizes the federal government to coin money and provide for the punishment of counterfeiting of the coins and securities of the United States. Moreover, the Necessary and Proper Clause empowers Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const., art. I, § 8, cl. 18. United States v. Worrall, 2 U.S. (2 Dall.), 384, 393 (1798) (Chase, J.), which Casey cites, holds that the Necessary and Proper Clause empowers Congress to create, define, and punish crimes. This issue is without merit and is DISMISSED.

4

Paragraphs 15-18 argue that there are no federal common law offenses and, therefore, federal criminal statutes must be enacted by Congress. Casey was convicted of violating 18 U.S.C. § 510(b), a federal criminal statute. This issue is without merit and is DISMISSED.

Next, ¶ 20 states that the Constitution does not mean one thing at one time and another thing at another time when circumstances have changed. Paragraph 45 seems to make a similar point, invoking the principle of <u>stare</u> <u>decisis</u>. Paragraph 21 states that it is treasonous for judges to decline to exercise jurisdiction they are given or to act in the absence of jurisdiction. Casey does not explain the application of these propositions to this case. These issues are without merit and are DISMISSED.

Paragraphs 22-28 argue that the Court has no authority to act in the absence of subject-matter jurisdiction, which cannot be waived. These paragraphs further argue that the Court lacked territorial jurisdiction over the offense and personal jurisdiction over him. As previously stated, <u>see</u> <u>supra</u> p. 3, this Court has subject-matter jurisdiction pursuant to 18 U.S.C. § 3231. The indictment alleged that the offense in question occurred in the Western District of Tennessee. The plaintiff was apparently arrested in this district. These arguments are without merit and are DISMISSED.

Paragraphs 29-31 argue that the statute under which Casey was convicted does not contain an interstate commerce nexus and, therefore, 18 U.S.C. § 510(b) exceeds the power of Congress to regulate interstate and foreign commerce. As previously mentioned, however, <u>see</u> <u>supra</u> p. 4, the statute in question is authorized by the

5

Necessary and Proper Clause. This issue is without merit and is DISMISSED.

Next, ¶¶ 32-38 cite to the Administrative Procedures Act, 5 U.S.C. § 552 et seq., and the Federal Register Act, 44 U.S.C. § 1505, for the propositions that (i) criminal statutes that have not been enacted into positive law cannot form the basis for a criminal prosecution and (ii) federal statutes are invalid in the absence of implementing regulations. Casey has not cited a single decision invalidating a federal criminal conviction because the statutes were not published in the Federal Register. Indeed, the Federal Register Act, 44 U.S.C. § 1505, on which Casey relies, by its terms, does not require federal criminal statutes to be published in the Federal Register. Thus, several courts have rejected similar challenges to federal criminal statutes. See, e.g., Walton v. United States, 184 F. Supp.2d 773, 776 (N.D. Ill. 2002); United States v. O'Leary, No. CRIM.97-25-P-H, 1999 WL 1995207, at *2 & n.4 (D. Me. Jan. 14, 1999). In the tax context, where claims of this nature have most frequently been asserted, courts have uniformly rejected the proposition that federal statutes are invalid unless they are published in the Federal Register and are accompanied by implementing regulations. See, e.g., Gass v. United States, No. Civ. 99-B-930, 2000 WL 1204575, at *2 (D. Colo. Mar. 15, 2000) ("An interpretative regulation is not necessary if the Congressional mandate of the Internal Revenue Code provision is clear."). This issue is without merit and is DISMISSED.

Paragraphs 39, 45, and 56 assert that the indictment is defective because it failed to allege that the defendant's acts had some connection to interstate or foreign commerce. As previously

6

explained, see supra p. 5, 18 U.S.C. § 510(b) has no interstate commerce element.

Paragraph 39 contains another argument, largely unintelligible, about how Congress was not properly in session on June 25, 1948 and, therefore, title 18 of the United States Code is not positive law. Casey does not cite any authority invalidating a federal criminal statute on this basis, and the argument has been rejected by other courts. United States v. Charles, Crim. No. 00-20022-01-KHV, Civil No. 02-3100-KHV, 2002 WL 31056548, at *4 (D. Kan. Sept. 9, 2002) ("Defendant argues that his conviction should be overturned because Title 18 of the United States Code was never properly enacted into positive law. Defendant asserts that Congress was not in session on June 25, 1948, the date Title 18 was purportedly enacted. Even if the Court assumes that Title 18 was not properly enacted, defendant's claim is without merit because he has not challenged the validity of the underlying legislation.") (collecting cases). Moreover, Casey does not even attempt to explain how this argument is applicable to 18 U.S.C. § 510(b), which was enacted in 1983 and therefore unaffected by the purported 1948 recodification. These issues are without merit and are DISMISSED.

Next, ¶¶ 47-48 assert that 18 U.S.C. § 3551, concerning authorized sentences for violations of the federal criminal laws, is inapplicable to this case because of the various jurisdictional defects previously identified. As each of these purported defects has been rejected, this issue is without merit and is DISMISSED.

Paragraphs 49-54 argue that a federal district court can lack subject-matter jurisdiction over a criminal case because of a

7

defect in the indictment, such as the fact that the criminal statute at issue is unconstitutional or was not properly enacted into law. For example, ¶ 52 asserts, in part, that "if a complaint or information charges one with a violation of a law which has no enacting clause, then no valid law is cited." Paragraph 54 asserts that the "jurisdictional nexus" was not presented to the grand jury. This argument is without merit for several reasons. First, the Supreme Court has made clear that any defects in an indictment do not implicate a district court's subject-matter jurisdiction. United States v. Cotton, 535 U.S. 625, 629-31 (2002); see also United States v. Titterington, 374 F.3d 453 (6th Cir. 2004). Second, Casey has not identified any particular defect in his indictment and has not cited any authority for the proposition that 18 U.S.C. § 510(b) was not duly enacted or is unconstitutional. This issue is without merit and is DISMISSED.

Paragraph 57 says that void judgments have no res judicata effect. For the reasons previously stated, however, the judgment in this case is not void.

Paragraph 58 refers to 18 U.S.C. § 3231, which is the basis for the Court's subject-matter jurisdiction over this criminal case. According to the document submitted by Casey:

> Defendant contends that the district (Tribunal) court of his conviction exercised "JURISDICTION" under 18 u.s.c. 3231. Apply not to the acts of congress [sic], which are applicable only in the district of columbia [sic]. see Rule 54(c). Said court mentions nothing in reference to common law or vice admiralty, the only two jurisdictions mentioned in the constitution, the constitution mentions nothing that could be construed as "JURISDICTION" under 18 u.s.c. 3231. Totally absent all jurisdiction to convict this defendant. Conviction in this case was void, Ab initio. (Emphasis and irregular capitalization in original.)

This argument is incomprehensible. To the extent Casey is making an argument about the geographic reach of the federal criminal laws, his argument is without merit for the reasons discussed supra, pp. 2-4.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Rules Governing Section 2255 Motions in the United States District Courts. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, his motion is DENIED.

Consideration must also be given to issues that may occur if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved

in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[3]

---

[3]    By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

10

In this case, for the reasons previously stated, the defendant's claims are plainly lacking in substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. Hereford v. United States, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal in forma pauperis in a § 2255 case, and thereby avoid the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917,[4] the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. Hereford, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

Rule 24(a) states, in pertinent part that:

> A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

---

[4]      Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by this defendant is not taken in good faith, and he may not proceed on appeal in forma pauperis.

IT IS SO ORDERED this ___30___ day of August, 2005.

JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 2 in case 2:04-CV-02844 was distributed by fax, mail, or direct printing on August 30, 2005 to the parties listed.

Christopher Robert Casey
FCI-FORREST CITY
18566-076
1301 Dale Bumpers Road
Forrest City, AR 72335

Timothy R. DiScenza
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT